HUFO OILS, et al., Appellants,

v.

RAILROAD COMMISSION OF TEXAS, et al., Appellees.

No. 14603.

Court of Appeals of Texas, Austin.

Aug. 13, 1986.

Rehearing Denied Oct. 8, 1986.

IV.

Bill Boyd, McKinney, for Hufo Oils and others.

Joe Cochran, Amarillo, for Phillips Petroleum.

Philip F. Patman, Austin, for Mobile Producing Texas and New Mexico, Inc.

P.M. Schenkkan, Robin A. Melvin, Austin, for Anadarko Production and Pan Eastern Exploration Co.

John G. Soule, Austin, for Diamond Shamrock Exploration and others.

Rex H. White, Jr., Austin, for Natural Gas Pipeline Co. of America.

Clint C. Small, Austin, for J.M. Huber Corp.

Thomas H. Burton, Jr., Houston, John F. Nance, El Paso, for El Paso Natural Gas Co.

Jim Mattox, Atty. Gen., Harold G. Kennedy and Jose Manuel Rangel, Asst. Attys. Gen., for Railroad Com'n of Texas.

SHANNON, C.J., and EARL W. SMITH, and GAMMAGE, JJ.

SHANNON, Chief Justice.

Appellant Hufo Oil Co. and other oil producers seek to set aside the judgment of the Travis County district court which affirmed, in the main, an order of the Railroad Commission of Texas prohibiting the counting of natural gasoline as crude oil for well-classification purposes. Phillips Petroleum Company, other gas producers, and the Railroad Commission of Texas are appellees.

This appeal is the culmination of a long-festering dispute between oil and gas producers in the Panhandle as to whether so-called "white oil" can be counted as oil for well-classification purposes. White oil is casinghead gas reduced to a liquid state (natural gasoline) by a LTX unit (low temperature extraction unit) located at the well site. Whether white oil may be regarded as oil for well-classification purposes has important ramifications for both gas and oil producers in the Panhandle and elsewhere.

Most wells produce both oil and gas in varying proportions. The Commission classifies these wells as either oil wells or gas wells, depending on the oil-to-gas ratio of the well. A well which produces less than one barrel of oil per 100,000 cubic feet of gas is a gas well. Tex.Nat.Res.Code § 86.002(5)(B) (1978). On the other hand, a well which produces one or more barrels of oil per 100,000 cubic feet of gas is an oil well. *Id.* at § 86.002(6) (1978).

The classification of a well as an oil well or a gas well has profound economic consequences for several reasons: 1) Spacing requirements are different for oil wells and gas wells. In the Panhandle, the spacing rule for gas wells is one well for each 640 acres, whereas oil wells may be spaced as close as one well for each ten acres. Accordingly, up to sixty-four oil wells may be drilled on the acreage required for one gas well. 2) Casinghead gas (the main product of many white oil wells) is given priority by gas pipeline companies, which means that it is purchased at off-peak times while gas from gas wells remains unsold. 3) In the Panhandle, ownership of oil and ownership of gas are often severed so that the owner of the oil rights does not own the gas rights and vice versa. 4) The gas-to-oil ratio of a well may increase with continued production, forcing an oil well to be reclassified as a gas well. These factors make it advantageous to have, and maintain, an "oil well" classification for a well in the Panhandle field.

The effort to maintain "oil well" classifications for wells prompted the increased use of LTX units in recent years to produce white oil which then is counted as oil to maintain the required ratio. The increased creation of white oil has been regarded with growing concern by the gas producers, one of whom in 1981 initiated this proceeding to eliminate the white oil practice.

In September 1981, Phillips Petroleum Co. filed an application for an amendment to the special field rules for the Panhandle field. The proposed field rule would have altered the reporting requirements for oil well operators in the Panhandle field by compelling them to report white oil separately from black oil. The purpose of the proposed rule was to prevent the counting of white oil as oil for well-classification purposes.

In February 1982, an organization of oil producers, PIPG, filed an alternative rule which would permit the counting of white oil as oil for well-classification purposes. The Commission consolidated this application with Phillips' application.

After extensive discovery and many prehearing conferences, the hearing commenced in Austin in September 1983, continued in Amarillo, and terminated finally in Austin. In May 1985, the Commission handed down its final order which concluded that existing statutes and agency rules prohibited the counting of white oil as oil for well-classification purposes. Accordingly, the Commission rejected Phillips' proposed rule as unnecessary.

The oil producers filed motions for rehearing raising, for the first time, the contention that the Commission should have proceeded by rulemaking rather than by contested case procedures. The Commission overruled the motions for rehearing.

The oil producers then filed an administrative appeal in the district court of Travis County. Phillips and other gas producers intervened in the suit in support of the Commission order. Four oil producers or owners, not parties in the agency proceedings, intervened in the suit in opposition to the Commission's order. These intervenors requested, as well, a declaratory judgment as to the validity and applicability of the Commission's rules. The district court overruled the Commission's and the gas producers' motions to strike the intervention of the four oil producer intervenors.

After hearing, the district court rendered judgment sustaining that part of the agency order construing substantive law to prohibit the counting of white oil as oil for well-classification purposes. The district court concluded, however, that the Commission erred in conducting its hearing as a

contested case rather than as a rulemaking proceeding.

Hufo and the other oil producers challenge the district court's affirmance of the agency order which concluded that existing law prohibits the counting of white oil (natural gasoline) as oil for well-classification purposes. More specifically, the Commission concluded that Nat.Res.Code § 86.002 is not ambiguous and does not permit the reporting of natural gasoline as crude oil in determining the gas-oil ratio of a well for purposes of well classification.

The statutory provisions affecting well-classification are the definitions in Chapters 85 and 86 of the Natural Resources Code.

§ 85.001(b): "Oil" means crude petroleum oil, crude petroleum, and crude oil, and "gas" means natural gas....

§ 86.002: In this chapter:

(1) "Oil" means crude petroleum oil.

(2) "Gas" means natural gas.

. . . . .

(5) "Gas well" means a well that:

. . . . .

(B) produces more than 100,000 cubic feet of gas to each barrel of oil from the same producing horizon; ...

. . . . .

(6) "Oil well" means any well that produces one barrel or more of oil to each 100,000 cubic feet of gas.

. . . . .

(10) "Casinghead gas" means any gas or vapor indigenous to an oil stratum and produced from the stratum with oil.

(11) "Natural gasoline" means gasoline manufactured from casinghead gas or from any gas.

Railroad Commission Statewide Rule 79(7) clarifies the definition of gas well:

Gas Well:

A well which produces hydrocarbon liquids, a part of which is formed by a condensation from a gas phase and part of which is crude petroleum oil, shall be classified as a gas well unless there is produced one (1) barrel or more of crude petroleum oil per one hundred thousand (100,000) cubic feet of natural gas; and that the term "crude petroleum oil" shall not be construed to mean any liquid hydrocarbon mixture or portion thereof which is not in the liquid phase in the reservoir, removed from the reservoir in such liquid phase, and obtained at the surface as such.

16 T.A.C. § 3.69.

■ In the opinion of this Court, § 86.002, by its unambiguous terms, provides that natural gasoline is not crude petroleum oil for purposes of well-classification. "Oil" is defined as "crude petroleum oil." An oil well is one which produces one barrel or more of *oil* to each 100,000 cubic feet of natural gas, while a gas well is one which produces more than 100,000 cubic feet of gas to each barrel of *oil*. The definitions of "oil well" and "gas well" refer not to natural gasoline, but instead to *"oil"* which means *crude petroleum oil.*

■ "Crude petroleum oil" refers to a substance in the ground in its natural and unrefined state. *Clymore Production Co. v. Thompson,* 13 F.Supp. 469 (W.D.Tex. 1936). "Natural gasoline," defined by § 86.002(11) as a substance *manufactured* from casinghead gas or other gas, cannot be "crude." Moreover, the Commission's Statewide Rule 79(7) specifically declares that crude petroleum oil must be naturally in a liquid state.

The oil producers rely upon *Livingston Oil Corporation v. Waggoner,* 273 S.W. 903 (Tex.Civ.App.1925, writ ref'd) and *Reynolds v. McMan Oil & Gas Co.,* 11 S.W.2d 778 (Tex.Comm.App.1928, holding approved) as authority for the premise that natural gasoline is crude petroleum oil. These opinions hold, however, that when an oil and gas lease is silent concerning payment of royalties for casinghead gas, the lessee must pay oil royalties on gasoline manufactured from such gas. The opinions concern construction of private oil and gas leases and have nothing to do with the problem of well-classification by the Com-

mission. Moreover, the opinions ante-dated the legislation now codified in § 86.002.

It is true, as suggested by the oil producers, that the Supreme Court in *Southland Royalty Co. v. Pan American Petroleum Co.,* 378 S.W.2d 50 (Tex.1964), recognized the continuing validity of *Reynolds* respecting lease interpretation for royalty purposes. However, *Southland,* like *Reynolds,* is not concerned with the problem of well-classification by the Commission.

We overrule the oil producers' points of error which attack the judgment declaring that the Commission correctly interpreted the substantive law to prohibit the reporting of natural gasoline as crude oil for well-classification purposes.

The gas producers and the Commission challenge that part of the judgment declaring that the Commission erred in conducting its hearing as a contested case rather than as a rulemaking proceeding. This Court sustains the challenge.

The oil producers did not voice their objection to proceeding as a contested case, nor did they assert their claimed right to a rulemaking hearing, until after the Commission had concluded a seven-week hearing, received written closing statements from the parties, received the proposal for decision, entertained exceptions to the proposal for decision, entertained oral submission and handed down a final order. Only in their motion for rehearing did the oil producers complain of the agency's conducting the hearing as a contested case instead of a rulemaking procedure.

Whether in a judicial or in an agency proceeding, a party should not be permitted to remain silent and lie in wait, taking a chance on the rendition of a favorable order, and being finally disappointed, then complain for the first time on motion for new trial or rehearing. *See Turner v. Turner,* 385 S.W.2d 230 (Tex.1964); *Dickson v. Dickson,* 544 S.W.2d 200 (Tex.Civ. App.1976, writ dism'd w.o.j.). Accordingly, the oil producers, by remaining silent, waived the right to complain of any impropriety by the agency in conducting the hearing as a contested case.

This Court observes that the district court's allowance of the four oil producers' intervention in the administrative appeal is questionable. *See Hurlbut v. Dripping Springs Ind. School District,* 617 S.W.2d 332 (Tex.Civ.App.1981, no writ). In any event, those parties which had notice of the agency proceeding may not be heard to contend for the first time in their petition for declaratory relief that the agency hearing should have been conducted as a rulemaking proceeding. That contention must be asserted before the agency at a time when the agency can consider its validity and conduct its proceeding accordingly.

This Court expresses no opinion concerning whether the Commission did, in fact, err by handling this proceeding as a contested case.

That part of the judgment declaring that the agency erred in proceeding in the matter as a contested case is reversed and judgment is here rendered declaring that the oil producers by their silence, waived any complaint that the hearing should have been conducted as a rule-making proceeding. In all other respects the judgment is affirmed.

EARL W. SMITH, J., not participating.