**OFFICE OF PUBLIC UTILITY COUN-SEL, City of Houston and the Houston Coalition of Cities, Cities for Fair Utility Rates, Mary Reyes, Fermin Venegas, Raul Flores and Juan Angel Garcia, Appellants,**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS, Houston Lighting & Power Company and Central Power & Light Company, Appellees.**

**HOUSTON LIGHTING & POWER COMPANY and Office of Public Utility Counsel, Appellants,**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS, Appellee.**

Nos. 3-91-301-CV, 3-91-237-CV.

Court of Appeals of Texas, Austin.

Dec. 9, 1992.

Rehearing Overruled Jan. 20, 1993.

Robert J. Hearon, Jr., Thomas B. Hudson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Houston Lighting & Power Co.

Walter Washington, Office of Public Utility Counsel, Austin, for Office of Public Utility Counsel.

Davison W. Grant, Redford, Wray & Woolsey, Austin, for Central Power & Light Co.

Jim Boyle, Boyle, Freeman & Bender, Austin, for Cities for Fair Utility Rates.

Fernando Rodriguez, Jorden Schulte & Burchette, Austin, for City of Houston and the Houston Coalition of Cities.

David Frederick, Austin, for Mary Reyes, et al.

Dan Morales, Atty. Gen., Karen Pettigrew, Asst. Atty. Gen., Austin, for Public Utility Com'n of Texas.

D.J. Powers, Boyle & Freeman, Austin, for Cities for Fair Utility Rates.

Before POWERS, JONES and KIDD, JJ.

KIDD, Justice.

The central issue presented on appeal is whether an order rendered by the Public Utility Commission of Texas (the "Commission") was final and appealable. The Commission opened Docket 6668 [1] solely to determine the prudence of the construction expenditures in the South Texas Project ("STP") by two utilities, Houston Lighting & Power Company ("HL & P") and Central Power & Light Company ("CPL").[2] Following extensive discovery and hearings, the Commission rendered its last order in Docket 6668, and the "Ratepayers"[3] and HL & P sought judicial review of that order in separate causes in district court. The Commission, in both causes, and CPL, in the Ratepayers' cause, moved to dismiss on the grounds that the last order in Docket 6668 was not a final administrative order, and, therefore, was not appealable. The trial court granted the motions to dismiss. The Ratepayers and HL & P bring separate appeals challenging the trial court's dismissal. We will affirm in part and reverse in part.

## BACKGROUND AND PROCEDURAL HISTORY

The procedural history of this case is long and tortuous. Docket 6668 originally developed from a request by HL & P and CPL in August 1985 that the Commission resolve all prudence issues arising during the Brown & Root construction era at STP.[4] The Commission, however, declined to limit the prudence inquiry to Brown & Root. The Commission, anticipating that it would eventually have to adjudicate all prudence issues in upcoming rate cases and that discovery of STP prudence issues would require much more time than a rate case would permit, directed its general counsel to open a full inquiry into all STP prudence issues. The Commission opened that inquiry on January 3, 1986, as Docket 6668. The Commission created Docket 6668 as an economical and practical procedure both to handle the massive discovery and to ensure a fair hearing regarding STP prudence matters. In its January 3, 1986, general counsel's original petition of inquiry, the Commission made clear that Docket 6668 would determine all STP prudence issues for both Units 1 and 2 of the project.

STP Unit 1 achieved commercial operation on August 25, 1988. On November 23, 1988, pursuant to section 43(a) of the Public Utility Regulatory Act,[5] HL & P filed its application for a rate increase in which it sought to include its share of the construction cost of STP Unit 1 in its rate base. The Commission styled this rate case as Docket 8425. On December 20, 1988, the

1. A necessary step in ratemaking is the determination of prudent investment of capital in a project. The Commission opened Docket 6668 to determine prudence issues of both utilities in both units of the South Texas Project.

2. STP is a two-unit nuclear power generating station owned jointly by HL & P, CPL, and two parties not regulated by the Commission and, hence, not involved in these causes—the City of Austin and the Public Service Board of the City of San Antonio.

3. The parties collectively referred to as "Ratepayers" are the Office of Public Utility Counsel ("OPC"); Cities for Fair Utility Rates ("CFUR");

the City of Houston and the Houston Coalition of Cities; and Mary Reyes, Fermin Venegas, Raul Flores, and Juan Angel Garcia, or the Lite Users Coalition for Equitable Service ("LUCES"). These parties are the appellants in cause number 3–91–301–CV.

4. In STP's initial stages of construction, HL & P had employed Brown & Root as its architect-engineer. HL & P later fired Brown & Root, and both parties litigated over the damages resulting from Brown & Root's work.

5. Public Utility Regulatory Act ("PURA"), Tex. Rev.Civ.Stat.Ann. art. 1446c (West Supp.1992). This is the Commission's enabling statute.

hearings examiner in Docket 6668 rendered examiner's order number 42, ordering a joint hearing on STP prudence issues in Docket 6668, Docket 8425, and any future rate case filed by CPL. In this order, the Commission again expressed its intent that Docket 6668 would be the single vehicle for the final determination of all STP-related prudence issues. Specifically, examiner's order number 42 provided that "the scope of the hearing in this case shall include all prudence issues, and shall be such as to finally determine all those issues."

CPL filed its STP Unit 1 rate case, Docket 8646, on February 15, 1989. The Commission began hearings in Docket 6668 on May 22, 1989. After extensive fact-finding on prudence issues, the Commission issued its examiner's report on April 19, 1990. In the examiner's report, the administrative law judge ("ALJ") wrote that the Commission's goal in joining the STP prudence issues included in Dockets 8425 and 8646 with Docket 6668 "was to determine the most expeditious and least expensive means of producing a full record for the Commission's consideration of these issues. That goal has been achieved, together with the opportunity for the Commission to deal with all the STP construction-related issues consistently in a final order." The report also identified the units to which it was applicable. Noting that only CPL opposed the inclusion of Unit 2 in Docket 6668, the ALJ ordered that Docket 6668 would apply to both Units 1 and 2. The ALJ also ruled that the findings in Docket 6668 relating to Unit 2 would be final and given res judicata effect. The parties opposed to the conclusions of the examiner's report timely filed exceptions on which the Commission heard oral arguments.

On June 20, 1990, the Commission issued its final substantive order in Docket 6668. The Commission held that the examiner's report and its findings of fact and conclu-

sions of law in Docket 6668 applied only to HL & P and should neither be rejected nor adopted as to CPL.[6] The Commission severed all issues in Docket 6668 pertaining to CPL and assigned them to a separate docket, Docket 9995.

In the June 20 order, the Commission also issued, among others, the following three conclusions of law:

*Conclusion of Law No. 21:* The powers given the Commission in PURA §§ 16(a) and (h), 17(a) and (e), 29(c), 39(a), and 41(a) need not be decided only within the context of a rate case filed by a utility.

*Conclusion of Law No. 22:* The reasonable and prudent investment of HL & P in Unit 2 of STP is properly decided in this case.

*Conclusion of Law No. 23:* The findings in this case regarding HL & P's prudence with respect to Unit 2 of STP will be final and will carry full res judicata effect when the order in this case becomes final.

On August 3, 1990, the Commission rendered an order partially granting the motions for rehearing of OPC, CFUR, Houston Coalition of Cities, LUCES, and the Commission. Additionally, the order extended the time for ruling on the rest of the motions for rehearing.

On September 18, 1990, the Commission issued its last order in Docket 6668, entitled "Order on Rehearing," denying all motions for rehearing and incorporating the June 20th order, including all accompanying findings of fact and conclusions of law, in its entirety.

Under section 19(a) of the Administrative Procedure and Texas Register Act[7] and section 69 of PURA, the Ratepayers filed an original petition in district court seeking

---

6. The Commission agreed to sever CPL's prudence issues from Docket 6668 as a result of a nonunanimous stipulated agreement reached in Docket 8646, which proposed full disposition of the case. As part of that agreement, additional evidence was introduced in Docket 8646 which was not in Docket 8425 and which provided an alternative approach for determining the rea-

sonable original cost of CPL's investment in STP. This other approach was not a construction-prudence analysis.

7. Administrative Procedure and Texas Register Act ("APTRA"), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(a) (West Supp.1992).

judicial review of the Commission's order.[8] The Commission and CPL filed pleas to the jurisdiction, alleging that the order was not final and appealable. The court sustained the pleas to the jurisdiction, dismissing the Ratepayers' action.

The Ratepayers subsequently appealed the district court's order of dismissal in cause number 3–91–301–CV. They bring one point of error: The district court erred in granting the pleas to the jurisdiction and, thus, dismissing the case. Joining the Commission and CPL as a party in cause number 3–91–301–CV, HL & P responds that the order was not final and appealable.

On the basis that the Commission had erroneously calculated the amount of HL & P's imprudent investment in STP, HL & P filed a separate lawsuit in district court seeking judicial review of the order. In its district-court petition, HL & P admitted that the order became final and appealable when the Commission denied HL & P's motion for rehearing in the September 18th order. The district court dismissed HL & P's suit for judicial review on two grounds: (1) the order was not final and appealable and (2) HL & P did not timely file its motion for rehearing with the Commission. In a separate appeal to this Court, cause number 3–91–237–CV, HL & P contends that the order was final and appealable. In its one point of error, HL & P asserts that, if we determine the order is appealable, the district court erred in dismissing its action because its motion for rehearing was timely filed.

## DISCUSSION

### 1. Finality of Order as to HL & P

The legislature established the requirements for a suit for judicial review of an administrative decision: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act." APTRA § 19(a). A "contested case" is defined as "a proceeding including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing." APTRA § 3(2). Unless inconsistent with PURA, APTRA applies to all proceedings under PURA. PURA § 4. In *People Against a Contaminated Environment v. Texas Air Control Board*, 725 S.W.2d 810, 811 (Tex.App.—Austin 1987, writ ref'd n.r.e.), this Court held that an administrative order must be final and appealable before a party may obtain judicial review.

■ Asserting that the last order in Docket 6668 is final and appealable, the Ratepayers, in cause number 3–91–301–CV, contend that the trial court erred in granting the pleas to the jurisdiction.[9] Responding that the order is neither final nor appealable, the appellees insist the decision is merely the prudence phase of a rate case. The appellees argue that the adjudication of prudence issues in Docket 6668 has no operative effect until incorporated into a rate order. The appellees further assert that, because the order in Docket 6668 does not aggrieve the Ratepayers, they are not entitled to review under APTRA.

A recent Texas Supreme Court opinion provides guidance for determining the finality of administrative orders:

Although there is no single rule dispositive of all questions of finality, courts should consider the statutory and constitutional context in which the agency op-

---

**8.** APTRA § 19(a) provides:
   A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act. This section is cumulative of other means of redress provided by statute.
   PURA § 69 provides:
   Any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule. The commission

shall be a party defendant in any such proceeding represented by the attorney general.

**9.** Each Ratepayer brings forth a point of error arguing that the order was final and appealable. The OPC urges, in an additional point, that the district court's conclusion that the order was interlocutory was error. Because these arguments raise similar issues, we address them collectively in our opinion.

erates, and should treat as final a decision "which is definitive, promulgated in a formal manner and one with which the agency expects compliance." Administrative orders are generally final and appealable if "they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process."

*Texas–New Mexico Power Co. v. Texas Indus. Energy Consumers,* 806 S.W.2d 230, 232 (Tex.1991) (citations omitted).

Applying the test enunciated in *Texas–New Mexico Power Co.,* the decision in the Docket 6668 order is definitive and unqualified; it determines the appropriate amount to be disallowed from HL & P's rate base for each unit of STP due to imprudent construction expenditures. Furthermore, the Commission's order, by its express terms, gives the prudence determination res judicata effect [10] and prevents the parties and the Commission from relitigating the prudence issue. *See Coalition of Cities for Affordable Util. Rates v. Public Util. Comm'n,* 798 S.W.2d 560, 564 (Tex. 1990). Clearly, the Commission formally promulgated the final order and expected compliance with its directives.

In *Texas–New Mexico Power Co.,* the supreme court urged a flexible, practical approach in determining the finality of an administrative order. 806 S.W.2d at 232. The policy requires courts to recognize "the need both to minimize disruption of the administrative process and to afford regulated parties and consumers with an opportunity for timely judicial review of actions that affect them." *Id.* Since the Commission will utilize the findings in the Docket 6668 order in HL & P's rate cases for both STP Units 1 and 2, a fully litigated and appealable order will facilitate the determinations made in those cases, thereby advancing the administrative process. Indeed, the Commission recognized that in the April 19th examiner's report, the treatment of "all the STP construction-related

issues" in a final order is "the most expeditious and least expensive means" of handling the matters. Furthermore, a conclusion that the order is final will provide all the parties an opportunity for prompt judicial review.

Demonstrating that the order establishes a legal relationship among the parties, the Ratepayers liken the procedural status of the Docket 6668 order to that of a final and appealable declaratory judgment. According to the Uniform Declaratory Judgments Act, a declaratory judgment establishing rights, status, or any legal relationship is a final judgment, "whether or not further relief is or could be claimed." Tex.Civ. Prac. & Rem.Code Ann. § 37.003(a) (West 1986). Similarly, the Ratepayers contend that the mere fact that the construction prudence issue is being determined outside the confines of a rate case does not deprive the Commission's res judicata decision of finality.

Appellees counter this argument by comparing the Commission's treatment of Docket 6668 to a partial summary judgment on one issue. Appellees urge that the situation at bar is analogous to a decision regarding a singular element, which remains interlocutory until all issues are adjudicated. Thus, they contend that the final decision in Docket 6668 resolves only one portion of each utility's rate case; this decision will become final and appealable upon incorporation into a final order in each rate case.

We find the Ratepayers' analogy more persuasive when examining the Commission's prudence determination as to HL & P. Although the order does not decide all potential related controversies, e.g., rate-making, it does resolve the issue of prudence of all STP construction expenditures for both Units 1 and 2. The order specified which STP costs were not recoverable by HL & P and which costs could be passed on to the Ratepayers. Thus, the order estab-

---

**10.** Although conclusion of law number 23 only gives res judicata effect with respect to Unit 2, the prudence determination as to Unit 1 had already been given operative effect by incorporating the Unit 1 prudence decision with the final rate determination of HL & P's Unit 1 rate case carried as Docket 8425. Thus, a separate res judicata conclusion of law as to Unit 1 was unnecessary.

lishes a legal relationship between the parties, which we regard as more analogous to a declaratory judgment.

In its examiner's order, issued in December 1988, the Commission ordered that "the scope of the hearing in this case shall include all prudence issues, and shall be such as to finally determine all those issues...." In the examiner's report issued in April 1990, the ALJ stated that the Commission had achieved both the goal of crafting a procedure by which STP prudence issues could be determined economically and the goal of determining all the STP construction-related matters consistently in one final order.

The Commission held almost six months of hearings, producing a 27,329–page transcript. The result of these proceedings was an order, complete with findings of fact and conclusions of law. The order is regular and final on its face, and it conforms to APTRA section 16's requirements for final orders; in fact, the Commission has never rendered another order in Docket 6668. Additionally, the order satisfies the conditions for the judicial review of a "contested case" in APTRA sections 3(2) and 19.

All the parties acted in a way that demonstrated they understood the order resulting from Docket 6668 would be final and appealable. The complaining parties filed exceptions to the examiner's report. The Commission scheduled meetings to treat only the issues in the report. After the issuance of the June 20th order, all complaining parties filed motions for rehearing, a step in final-order practice. *See* APTRA § 16(e). All of the parties who appealed the prudence findings and conclusions did so in appeals separate from their appeals of the individual utility companies' rate cases. Ironically, HL & P, now contending that the order is not final, initially claimed that the order was final and appealable.

The order in Docket 6668 has res judicata and collateral estoppel effect. As noted, the supreme court, in *Coalition of Cities*, held that the doctrines of res judicata and collateral estoppel preclude relitigation before the Commission of prudence issues for

inclusion in a rate base. 798 S.W.2d at 565. Even appellee, HL & P, admits that the findings of Docket 6668 acquired res judicata status. The order therefore satisfies the finality requirement not only of APTRA section 19, but also of the res judicata and collateral estoppel doctrines as applied to HL & P. *Id.*

■ Although agreeing that the doctrine of res judicata applies to the order, appellee, HL & P, asserts that the issues in this case are not ripe for review. In *Browning–Ferris, Inc. v. Brazoria County*, 742 S.W.2d 43, 49 (Tex.App.—Austin 1987, no writ), this Court discussed the test for determining ripeness: Courts should examine "(1) the fitness of the issues for judicial decision, and (2) the hardship occasioned to a party by the court's denying judicial review." HL & P argues that the Ratepayers are not imminently and adversely affected by the order in Docket 6668. HL & P maintains that the Ratepayers will not experience the effects of the order until the findings are utilized and rates are set. We disagree.

For the reasons discussed in respect to the declaratory-judgment and partial summary-judgment analysis, we conclude that the issues before the Court today are ripe for judicial review. The final order setting the prudent cost of STP determines the legal relationships of the parties. No party could relitigate these findings. The findings legally affect the parties in the same manner as a determination in a declaratory-judgment action. For these reasons, we conclude that the order in Docket 6668 as applied to HL & P is final and appealable. Accordingly, we sustain the Ratepayers' point of error regarding the finality of the order as applied to HL & P.

### 2. Finality of Order as to CPL

■ We determine, however, that the order is not final as applied to CPL. By severing the issues in Docket 6668 pertaining to CPL and assigning them to an entirely new docket, the Commission demonstrated its intent to treat CPL and HL & P differently in the order. The Commission specifically states that the severance oc-

curred before the consideration and decision in Docket 6668. Therefore, severance took place before the order became final. In addition, the Commission and CPL treated the Docket 6668 determinations as discovery, not as final decisions. Therefore, we overrule the Ratepayers' point of error to the extent it applies to CPL.

### 3. HL & P's Motion for Rehearing

■ A complaining party must file a motion for rehearing within twenty days after receiving notice of the agency's final order to file a suit for judicial review in district court. APTRA § 16(c), (e); *Vandergriff v. First Fed. Sav. & Loan Ass'n*, 586 S.W.2d 841, 842 (Tex.1979); *Ector County Comm'rs Court v. Central Educ. Agency*, 786 S.W.2d 449, 450 (Tex.App.—Austin 1990, writ denied). HL & P timely filed a motion for rehearing as to the June 20th order. Subsequently, the Commission rendered two orders, one on August 3rd and the other on September 18th. The August 3rd order granted the motions for rehearing of OPC, CFUR, Houston Coalition of Cities, LUCES, and the Commission.[11] Additionally, in this order, the Commission extended the time for ruling on all other issues and motions for rehearing of the other parties, including HL & P. *See* § 16(e); 16 Tex.Admin.Code § 21.161 (1988). The September 18th order denied all motions for rehearing, including HL & P's, and incorporated, without change, the June 20th order in its entirety. HL & P did not file a second motion for rehearing as to the September 18th order, but filed suit for judicial review in district court. At issue is whether HL & P's failure to file a second motion for rehearing to the September 18th order is fatal to its district-court suit.

■ A motion for rehearing must " 'be sufficiently definite to apprise the regulatory agency of the error claimed and to allow the agency opportunity to correct the error or to prepare to defend it.' " *Ector County Comm'rs Court*, 786 S.W.2d at 450 (Tex.App.—Austin 1990, writ denied) (quoting *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 365 (Tex.1983)). With this purpose in mind, we determine that HL & P's motion adequately informed the Commission of its alleged error. The two subsequent orders the Commission issued after the June 20th order did not alter the June 20th order from the perspective of HL & P; the August 3rd order merely extended the time for the Commission to rule on the motions of rehearing, including HL & P's motion for rehearing, and the September 18th order denied the motions for rehearing. The September 18th order on rehearing adopted in its entirety the June 20th order, including all findings of fact and conclusions of law. An additional motion for rehearing by HL & P would not have provided any additional notice to the Commission since the substance of the last two orders did not change the decision affecting HL & P.[12]

The Commission relies on case law for the proposition that generally, when an agency grants a motion for rehearing and issues a subsequent order, a party must file an additional motion for rehearing as a prerequisite to a suit for judicial review of such order. Specifically, the Commission relies on our decision in *Southern Union Gas Co. v. Railroad Comm'n*, 690 S.W.2d 946, 948 (Tex.App.—Austin 1985, writ ref'd n.r.e.). In that proceeding, the Railroad Commission granted the gas company's motion for rehearing for the limited purpose of changing the effective date to implement new rates and, thereby, modified its earlier order. The Commission denied the motion for rehearing in all other respects. Southern Union Gas did not file a second motion for rehearing. *Id.* at 947. This Court determined that Southern Union Gas was required to file a second motion

---

11. In this order, the Commission limited the rehearing to further cross-examination regarding General Counsel Exhibit 35. The scope of permissible examination was restricted to whether the calculations in the exhibit were mathematically correct and were reflective of the Commission's decision.

12. We note that the rehearing practice before state agencies may differ from those before the Courts of Appeals. *See Oil Field Haulers Ass'n v. Railroad Comm'n*, 381 S.W.2d 183 (Tex.1964).

for rehearing after the Commission modified its earlier order. *Id.* at 948. This Court rejected the argument that a second motion was unnecessary because the modification of the earlier order was not substantial. *Id.* at 948–49; *see Ross v. Texas Catastrophe Property Ins. Ass'n,* 770 S.W.2d 641, 644 (Tex.App.—Austin 1989, no writ) (to draw distinction between order that agency changes substantially in response to motion for rehearing and one that changes only in minor fashion is not the law of this state).

The instant cause is distinguishable, however, from *Southern Union Gas.* The Commission's argument fails to recognize that the Commission's September 18th order on rehearing did not alter the June 20th order in any way with respect to HL & P. Whether a change is minor or material is of no consequence in the instant case because, here, no change occurred. For this reason, we hold that appellant, HL & P, was not required to file a second motion for rehearing to perfect its administrative appeal. *See Consumers Water, Inc. v. Pub. Util. Comm'n,* 741 S.W.2d 348 (Tex.1987); *El Paso Elec. Co. v. Pub. Util. Comm'n,* 715 S.W.2d 734 (Tex.App.—Austin 1986, writ ref'd n.r.e.). Accordingly, we sustain HL & P's point of error in cause number 3–91–237–CV.[13]

## CONCLUSION

In cause number 3–91–301–CV, we reverse the district court's order to the extent it dismissed the action against HL & P, and we remand the cause for district-court judicial review. We affirm that portion of the district court's judgment dismissing the action against CPL. In cause number 3–91–237–CV, we reverse the order of the district court and remand for district-court judicial review.

---

13. We note that the office of Public Utility Counsel is also an appellant in cause number 3– 91–237–CV and we sustain its point of error as well.